■ NATIONAL BANK OF NORTH AMERICA, Respondent, v EDWARD CHU,

Appellant, et al., Defendants.—Judgment, Supreme Court, New York County, entered October 18, 1977, whereby it was adjudged that plaintiff recover of defendant Edward Chu the sum of $50,181.72, plus interest and costs, affirmed, without costs and disbursements. Plaintiff National Bank of North America brought this action to recover $50,181.72 on account of an overdraft in the checking account of defendant Chia Mei Corporation. Recovery was sought against the individual defendants based upon guarantees executed by them covering debts of the corporate defendant. Plaintiff successfully moved for partial summary judgment on its fifth cause of action as against the defendant guarantors Edward Chu and David Chien. Defendant Chu appeals the judgment entered pursuant to the order granting such partial summary judgment. The existence of the debt and the fact that the defendant Chu signed an individual guarantee are not disputed. Instead, defendant Chu claims fraud in the inducement of the guarantee executed by him in that he was not informed that he was signing a guarantee of a loan from plaintiff to the corporate defendant, and he signed the guarantee without reading it in the mistaken belief that it related solely to the signing of checks for Chia Mei Corporation. It was asserted by Chu that he has limited reading ability and is not fluent in English, the language of the written guarantee, and that he did not even know what a guarantee was. In *Pimpinello v Swift & Co.* (253 NY 159, 162-163), the Court of Appeals most pertinently observed: "Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. (Wigmore on Evidence, § 2415.) If the signer could read the instrument, not to have read it was gross negligence; *if he could not read it, not to procure it to be read was equally negligent;* in either case *the writing binds him. (Chicago, St. P., M. & O. Ry. Co. v Belliwith,* 83 Fed. Rep. 437.) * * * If the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void" (emphasis supplied). We do not have here a case involving misinterpretation or misreading. Defendant-appellant implicitly admits to having engaged in business and expresses no unfamiliarity or hesitancy respecting the business acumen necessary for signing checks on behalf of the corporate defendant. There is no claim that plaintiff's vice-president K. C. Leung misinterpreted or misread the document to defendant-appellant, or that the latter requested Mr. Leung to explain or read the document to him and that Leung refused to do so. There is no basis on this record for concluding that plaintiff had a duty, *sua sponte,* to explain to defendant Chu the terms of the guarantee and mere silence by plaintiff may not, under these circumstances, be viewed as constituting a species of fraud so as to render void the written guarantee admittedly executed by defendant Chu (see *Peoples' Bank of City of N. Y. v Bogart,* 81 NY 101; see, also, *White v Idsardi,* 253 App Div 96, 100-101). "There was here no confidential relationship nor one of trust between the plaintiff bank and the [defendant-appellant]. The parties were dealing in a commercial transaction at arm's length. The duty of inquiry was upon the [defendant-appellant] It was the duty of the [defendant-appellant] to look out for [himself] and ascertain the nature of the obligations embraced in [his] undertaking. Any other rule would render securities of this character of but little, if of any, value. *(Western N. Y. Life Ins. Co. v. Clinton,* 66 N. Y. 326, 331.) The concealment which will avoid a guarantee must be a fraudulent one; if not fraudulent in fact or in law, the defense is not made out" *(Security Nat. Bank of Long Is. v Compania Anonima De*

*Seguros,* 21 Misc 2d 158, 161, affd 10 AD2d 872; see, also, *Gindel v Long Is. Nat. Bank,* 36 AD2d 968). Concur—Lupiano, Lane and Sullivan, JJ.; Kupferman, J. P., and Sandler, J., dissent in a memorandum by Sandler, J., as follows: On plaintiff's motion for partial summary judgment, the court at Special Term entered against the defendant judgment in the amount of $50,181.72, plus interest and costs, on the basis of his guarantee of a letter of credit issued by the plaintiff in favor of the Chia Mei Corp. The signing of the guarantee and the amount of the overdraft giving rise to the action are not disputed. Defendant, however, asserts that he signed the guarantee without reading it because he had been misled by a principal of the corporation into believing that it was only a formal document authorizing him to sign checks on behalf of the corporation. In addition, defendant alleges that there are circumstances raising factual issues as to whether or not an officer of plaintiff bank participated in the deception. As detailed by the defendant in an affidavit not controverted in any respect by plaintiff, the events leading up to his signing the guarantee are as follows. A Mr. Chien, president and principal stockholder of Chia Mei Corp., asked him in a telephone conversation if he would agree to sign checks on behalf of the corporation during a trip that Mr. Chien was making to Taiwan, and defendant agreed to do so. Mr. Chien was a former business associate, but the defendant had no present business connection with him, nor did he have any interest in the corporation. The defendant, Chien and a Mr. Leung, then a vice-president of plaintiff bank, met at lunch. During the conversation, reference was made to defendant's signing checks for the corporation during Mr. Chien's absence. Neither than nor subsequently was anything said about the signing of a guarantee. The three men then went to Mr. Leung's office where he presented documents for signature, which the defendant signed, without reading, believing that they related solely to the signing of checks for the corporation. At no time was he advised that one of the documents was a guarantee, nor was any inquiry made concerning his finances. Defendant goes on to state that he has "limited reading ability in English" and does not, even now, understand the meaning of the guarantee that he signed. Unquestionably defendant's affidavit invites a measure of skepticism. It is not easy to understand how Mr. Chien could have expected to succeed in the deceit alleged unless it were accepted that the bank official and he were in collusion, which is independently a proposition that seems improbable on its face. On a motion for summary judgment, however, the test, of course, is whether or not factual issues are presented. In my opinion defendant's wholly uncontradicted statements raise factual questions that preclude the granting of summary judgment at this point in the litigation. The leading case in this area is *Pimpinello v Swift & Co.* (253 NY 159), in which the court sustained the legal sufficiency of a complaint that sought to avoid the legal effect of a stipulation signed by the plaintiff. The plaintiff had asserted that he was unable to read or write English and had signed a stipulation of settlement on the misrepresentation by his own attorney that the document in question was merely a receipt acknowledging partial payment in connection with a negligence action. The applicable principles of law were developed by the court with painstaking care (pp 162-163): "Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. * * * If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him. * * * However, there are instances where 'an unexpressed intent can be allowed

to overthrow the outward act.' (Wigmore on Evidence, § 2405.) If the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void." The court went on to describe the holding in *Thoroughgood's Case* (2 Coke 9) in which a deed of land was declared void where it appeared that the signer, unable to read English, had been deceived by a stranger to the transaction into believing that it was merely the release of certain arrearages of rent. The court noted that Mr. Justice Story (Story's Equity Jurisprudence, § 60) had approved the holding in *Thoroughgood's* case in the following language (p 164): "Thus, for example, reading a deed falsely to an illiterate person, whether it be so read by the grantee or by a stranger, avoids it as to the other party at law." Finally, the court completed its analysis in the following words (pp 164-165): "The instrument fails because its conclusiveness is destroyed by the misrepresentation, and it then appears that the signer had no volition to promise or act as therein represented. * * * The conclusiveness of the writing, however, is not avoided, if the signer, in crediting the representation made, has in any wise been negligent." *Pimpinello* is not in terms dispositive of the issue presented, since the defendant asserts a limited capacity to read and understand English, not a total inability to do so. However, this limited capacity when applied to an instrument as technical and formal in its phrasing as the form guarantee here involved may, subject to further factual exploration, be the realistic equivalent. When this assertion is considered in connection with other facts developed in the defendant's affidavit, the principle implicit in *Pimpinello* seems to me persuasive authority against granting summary judgment on the present state of this record. This is not a situation in which defendant signed without reading an instrument that he knew imposed some liability on him and the general character of which he understood although he claims to have been misled as to the presence or meaning of particular provisions in the document. This defendant believed that he was signing an instrument authorizing him to sign checks, not one that exposed him to financial liability. This assurance came from a friend whom he had no reason whatever to distrust. Nothing was said in his conversations with Chien or Leung that suggested any reason for suspicion. The fact that the bank official made no inquiry as to his finances would surely reasonably negate any thought that he was about to sign a guarantee, if anything had occurred to give rise to such a concern. Under the circumstances described, I find no basis whatever for finding that the defendant was negligent as a matter of law in failing to read the instrument before he signed it or in failing to request the bank official to describe explicitly the nature of the instrument that he was signing which he had every reason to believe that he already knew. In *Pimpinello,* as already noted, the court held that an instrument might be voided under the described circumstances even if the deception was not that of a party seeking to enforce an obligation set forth in it. Whether that principle is appropriately applied to the factual situation here is an issue that need not be resolved at this time. Enough is set forth to raise factual questions requiring exploration as to the possibility of culpable behavior by the bank's official sufficient to sustain the defense. In my opinion, it is not necessary to the asserted defense to establish that Mr. Leung actively colluded with Mr. Chien in the alleged deception. I would think it enough if it be shown that Mr. Leung was aware, or should have been aware, that the defendant misunderstood the nature of the obligation that he was assuming and failed to inform him appropriately. (See *Matter of*

*First Citizens Bank & Trust Co. of Utica v Sherman,* 250 App Div 339.) The judgment entered below should be vacated without prejudice to the plaintiff moving for summary judgment after the completion of discovery.