**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

**v.**

**MM & S PARTNERS, et al., Defendants.**

No. 84 C 9392.

United States District Court, N.D. Illinois, E.D.

Dec. 6, 1985.

Thomas B. McNeill, Patricia R. McMillen, Mayer Brown Platt, Chicago, Ill., for plaintiff.

John P. Lynch, David F. Pursel, Latham & Watkins, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

In September 1984, Continental Illinois National Bank & Trust Co. of Chicago

("Continental") conveyed its interest under certain loan documents to the Federal Deposit Insurance Corporation ("FDIC"). The FDIC acquired these documents pursuant to 12 U.S.C. § 1823(c)(1)(A) as part of a plan of assistance to prevent Continental's demise. See Memorandum of Plaintiff FDIC in Support of Motion for Summary Judgment, Exh. H.

In the instant case, the FDIC seeks to recover on a note and guaranty signed by the defendants which the FDIC acquired as a part of this plan of assistance. The defendants have raised six affirmative defenses and a five-count counterclaim, generally premised on the argument that Continental agreed to alter the terms of the written note, or by its conduct waived certain terms, and, therefore, the FDIC, as Continental's assignee, is estopped from enforcing the written terms of the loan documents. In response, the FDIC argues that under 12 U.S.C. § 1823(e), the doctrine announced in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and federal common law, the defendants may not assert these defenses against it. Because the FDIC is immune to such defenses, it argues that summary judgment should be granted in its favor on both its action and defendants' counterclaim against it and Continental. For the reasons given below, we agree that the defendants may not assert these defenses against the FDIC, but continue its motion for summary judgment.

**FACTS**

The FDIC and defendants agree to the following facts. There are six defendants: (1) MM & S Partners ("MM & S"), a general partnership; MM & S' three general partners, (2) Mehl MM & S Limited, (3) Smith MM & S Limited, and (4) Patrick D. Maher, (5) Robert L. Mehl, and (6) Jordan Smith. On or about May 7, 1980, MM & S entered into a credit agreement with Continental, by which the bank provided the partnership with a line of credit not to exceed $10 million. Pursuant to that 1980 credit agreement, the partnership executed a promissory note, and, subsequently, MM & S drew upon the line of credit. Two years later, the credit agreement was amended to increase the line of credit to $20 million; MM & S executed another promissory note and drew on the line of credit. Finally, on or about March 22, 1983, the 1982 credit agreement was further amended by an agreement titled Amended and Restated Agreement ("Restated Agreement"). Pursuant to the Restated Agreement, MM & S executed a promissory note in the amount of $23 million, and the partnership's line of credit was again increased. On the same day, defendants Maher, Mehl and Smith executed a guaranty by which they guaranteed the full and prompt payment of all of MM & S' obligations to the bank.

Since that date, MM & S has not paid the amounts stated in the Restated Agreement to be due on certain dates, and Continental has declared the outstanding principal of and all accrued interest on the 1983 note to be immediately due and payable. It notified the partnership of its alleged default, has demanded payment in full, and MM & S has not paid the sum declared to be owing. Continental has also notified the guarantors of MM & S' default and the acceleration of the partnership's indebtedness and have demanded payment in full, but the guarantors have not paid.

The defendants add to this scenario two disputed fact assertions: Continental, either by agreement or conduct, excused the defendants from meeting certain terms in the Restated Agreement, and the FDIC was aware of this excuse when it purchased the loan documents. Specifically, the defendants allege that Continental "understood" that defendants would be using the money to purchase oil and gas properties, and "represented" to defendants that it would not require MM & S to make payments at the times or in the amounts stated in the Restated Agreement. First Affirmative Defense, ¶ 2. Continental further "represented" that it would accept, in full satisfaction of MM & S' obligations under the Restated Agreement, the proceeds of sales of MM & S' assets. *Id.*, ¶ 3.

Relying on Continental's understandings, agreements and representations, defendants allege that they performed certain acts, such as selling the partnership's assets and providing Continental with additional collateral. *Id.*, ¶¶ 4, 5. Continental has accepted defendants' payments not made in accordance with the terms of the Restated Agreement, and the FDIC "had knowledge" of Continental's conduct. *Id.*, ¶ 8.

Based on these additional fact allegations, defendants argue that Continental waived MM & S' compliance with the written terms of the Restated Agreement, and the FDIC is barred by Continental's waiver. *Id.* This waiver concept is rephrased in defendants' other affirmative defenses and counterclaim counts to allege estoppel and breach of contract.

## DISCUSSION

The FDIC argues that even if defendants' additional factual allegations are true (which it disputes), it cannot be bound by Continental's agreements or conduct for two reasons. First, 12 U.S.C. § 1823(e) prevents a debtor from asserting an agreement between him and the bank from which the FDIC purchased the note unless certain requirements are met, and these requirements were admittedly not met here. Second, even if § 1823(e) does not apply, under *D'Oench*, the defendants still cannot utilize these defenses, even if the FDIC knew of Continental's conduct.

In response, the defendants argue that § 1823(e) does not apply because their defenses are based on Continental's conduct, not an "agreement," and, under federal common law, they may assert such a defense if the FDIC had actual knowledge of the defenses when it purchased the defendants' note. Because recent cases on these two points are somewhat contradictory, we must look at the law in some detail.

### D'Oench, § 1823(e) and Federal Common Law

In 1942, the Supreme Court decided *D'Oench*. There, the FDIC sought to enforce a note, and the maker argued that he was not liable because the note was an accommodation paper, given without consideration and upon an understanding that it would not be collected. Applying federal common law, the Court held that the maker could not use this defense, because, although he had not known that the note would be used to deceive the FDIC, by his actions he had "lent himself" to the bank's scheme to make the FDIC believe that the note was good and owing. Since it is a federal policy to protect the institution of banking from secret agreements, the maker could not assert the agreement not to pay and lack of consideration as defenses. *D'Oench*, 315 U.S. at 461–62, 62 S.Ct. at 681.

Subsequent to this decision, Congress codified the case in § 1823(e). *FDIC v. Van Laanen*, 769 F.2d 666, 667 (10th Cir.1985) (§ 1823(e) codification of *D'Oench*); *FDIC v. Blue Rock Shopping Center*, 766 F.2d 744, 753 (3d Cir.1985) (same); *Howell v. Continental Credit Corp.*, 655 F.2d 743, 746 (7th Cir.1981) (same). Section 1823(e) states:

**(e) Agreements against interests of Corporation**

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

Thus, if a maker tries to defend by asserting an agreement between him and the bank altering the written terms of a note, unless that agreement meets all four

requirements of § 1823(e), the defense is so frivolous as to merit the sanction of attorney's fees. *Van Laanen,* 769 F.2d at 667.

Under § 1823(e) and *D'Oench* it is irrelevant whether the FDIC actually knows that an agreement not meeting the section's four requirements exists. *FDIC v. Investors Associates X., Ltd.,* 775 F.2d 152, 155–56 (6th Cir. Oct. 23, 1985); *FDIC v. Merchants National Bank of Mobile,* 725 F.2d 634, 640 (11th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984); *FDIC v. de Jesus Velez,* 678 F.2d 371, 375 (1st Cir.1982); *FDIC v. First Mortgage Investors,* 485 F.Supp. 445, 451 (E.D.Wis. 1980). This is because *D'Oench* is "essentially premised upon the proposition that a wrongdoer or one who lends himself to aid a fraudulent scheme should not be able to defend his actions based upon events emanating out of a transaction which violates public policy." *Investors Associates,* at 155–56. Therefore, "[r]egardless of the FDIC's knowledge of the circumstances surrounding the transaction, the fraudulent scheme is still contrary to public policy and the wrongdoer still should not be able to benefit from something that transpired during the course of such a scheme." *Id.*

at 6. *See also First Mortgage Investors,* 485 F.Supp. at 451.

Also, usually the FDIC open-bank division examiners visit insured banks, especially failing ones. If the closed-bank division, which determines whether to purchase failing banks' assets, were held to the open-bank division's knowledge, "the protection of Sec. 1823(e) would be lost.... The resulting uncertainty would undercut FDIC's ability to value assets quickly and precisely...." *Merchants National Bank,* 725 F.2d at 640.

█ Thus, the need for certainty and the conclusive presumption of maker knowledge that he is deceiving the FDIC when he knows his collateral agreement has not met § 1823(e) standards makes FDIC knowledge irrelevant, and, therefore, if a maker's defenses are based on a collateral agreement, the defenses must fail.[1] In contrast, § 1823(e) does not apply if the defenses do not arise out of such an agreement. *FDIC v. Leach,* 772 F.2d 1262, 1267 (6th Cir.1985); *Blue Rock,* 766 F.2d at 753; *FDIC v. Hatmaker,* 756 F.2d 34 (6th Cir. 1985); *FDIC v. Gulf Life,* 737 F.2d 1513 (11th Cir.1984); *Howell,* 655 F.2d at 746.[2]

1. If the FDIC goes beyond mere knowledge and actually *approves* of the bank's collateral agreement, then there is some support for the position that a maker can assert an estoppel defense against the FDIC's enforcement of his note. *See Investors Associates,* at 155, n. 5; *FDIC v. Harrison,* 735 F.2d 408 (11th Cir.1984); *FDIC v. Leach,* 772 F.2d 1262, 1268 (Morton, J., concurrence). Even if we accept this position, here, the defendants only allege knowledge. First Affirmative Defense ¶ 8. Moreover, it appears that by "approval," courts mean positive FDIC conduct, probably limited to the time after the FDIC purchases the note. *See Harrison,* 735 F.2d at 412–13 n. 6. Here, defendants have alleged no post-acquisition conduct on the part of the FDIC at all, and at most, have alleged only pre-acquisition FDIC acquiescence. They assert that a Continental second vice president who worked on the restructuring of defendants' loan also acted as a spokesperson for the FDIC after the transfer. Defendants' Memorandum in Opposition at 5, Exh. H. But they have not alleged a defense based upon *FDIC* conduct. Even if the second vice president's conduct after acquisition can be imputed to the FDIC, the defendants' defense is only based on a pre-acquisition conduct, and we believe that a rat-

ification theory cannot be asserted against the FDIC, at least under the circumstances of this case. In the absence of actual positive conduct beyond acquiescence, we believe that § 1823(e) or *D'Oench* still bars assertion of an estoppel defense.

2. It is unclear whether *D'Oench* itself is limited to agreement situations, and, therefore, whether *D'Oench* could be used to bar defenses even where the FDIC has knowledge in non-agreement situations. *See FDIC v. Powers,* 576 F.Supp. 1167, 1171, 1172 n. 2, *aff'd mem.,* 753 F.2d 1076 (7th Cir.1984). *D'Oench* referred to secret agreements. But the court in *Powers* states that the *D'Oench* doctrine "seems more flexible than § 1823(e), and it has been applied to a wide range of defenses." *Powers,* 576 F.Supp. at 1171. In *Leach,* the defendant raised the defense of lack of consideration. The court found that § 1823(e) did not apply because the defendant's claim was not based upon a collateral agreement. Yet the court held that the defense was barred by *D'Oench.* It may be, therefore, that some courts find that *D'Oench* covers more situations than § 1823(e): § 1823(e) covers collateral agreements only, while *D'Oench* covers any defense related to a "scheme." *See Hatmaker,* 756 F.2d at 35.

As to defenses not arising out of a collateral agreement, general federal common law appears to apply, and there is support for the proposition that actual FDIC knowledge can permit a maker to raise the defenses. *Gulf Life*, 737 F.2d at 1513. *See FDIC v. Wood*, 758 F.2d 156, 162 (6th Cir. 1985); *Gunter v. Hutchinson*, 674 F.2d 862, 873 (11th Cir.1982), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

Therefore, the fundamental issue in this case is whether the defendants' defenses arise out of a collateral agreement they made with Continental (known or unknown to the FDIC at the time of purchase), or whether the defenses are sufficiently removed from any agreement to permit their assertion.

**Agreement or conduct**

██ Defendants argue that at least their waiver and estoppel defenses are outside the collateral agreement they allegedly made with Continental (they therefore appear to concede that that part of their defenses and counterclaim based upon the agreement are barred). They reason that because these two defenses do not depend on mutual assent, but rather focus on Continental's conduct, the defenses are not agreement based, and, therefore, are not precluded. *Gulf Life* appears to be squarely on point and supports their position.

In *Gulf Life*, the defendant issued two creditor life insurance policies to two banks which insured the bank's borrowers, with the banks as beneficiaries. The banks paid the defendant premiums out of the money they received from the debtors. In practice, the defendant only received 35 percent of the premiums, with the rest distributed among the bank officers and employees who sold the insurance to the debtors. The policies, however, indicated that the bank would refund 100 percent of the premiums if the loans were terminated before all the premiums were paid. The FDIC was appointed receiver for the banks and purchased in its corporate capacity certain of the banks' assets, including the two policies. It then sued the defendant for 100 percent of the amount of unearned premiums due the debtors on approximately 300 prematurely terminated loans. The defendant argued that it was liable for only 35 percent of the refunds, since it received only 35 percent of the premiums. *Gulf Life*, 737 F.2d at 1516.

The defendant apparently had no documents meeting § 1823(e)'s requirements supporting its position, but the court stated that § 1823(e) did not apply to its waiver, estoppel and unjust enrichment defenses:

> Section 1823(e) by its terms protects the FDIC from "agreement[s]" not satisfying the section's requirements. Because Gulf Life's theories of waiver, estoppel, and unjust enrichment are not doctrines based on the parties' mutual assent, section 1823(e) is inapplicable to these defenses.

*Id.*

In reaching this conclusion, the court relied upon an earlier Eleventh Circuit decision, *Gunter*. In *Gunter*, the plaintiffs took out a loan with a bank and executed a promissory note. They then used the funds to purchase a controlling interest in a second bank, which failed. The lending bank also failed, and the FDIC purchased the note. The plaintiffs sued the FDIC for rescission, claiming that their purchase of the stock and consequent execution of the note were induced by the lending bank's fraudulent misrepresentations concerning the financial health of the second bank. The FDIC counterclaimed for payment on the note. The court stated that § 1823(e) did not apply because the default did not arise from an agreement: the plaintiffs were not asserting a modifying side agreement, but rather were claiming that the original loan agreement was invalid. *Gunter*, 674 F.2d at 867. *See also Howell*, 655 F.2d at 747 (when maker's defense is based

---

Whether or not *D'Oench* goes beyond agreement situations, the result in this case is the same, since we hold that this is an agreement situation. *See infra* at 10. However, alternatively, if this is not an agreement situation, we hold that it is a "scheme" situation, and the defendants' defenses are still barred under *D'Oench.*

on original terms of written agreement, defense not barred).

Here, the FDIC tries to distinguish *Gulf Life* by arguing that the waiver and estoppel defenses here *are* based on mutual assent, since Continental's · conduct flows directly from an alleged understanding or agreement to alter the terms of the written loan agreement. It distinguishes *Gunter* by pointing out that the defendants here are not claiming that the original terms of the Restated Agreement were invalid at the time they were agreed to, but only that subsequent conduct altered those terms.[3]

We agree that *Gunter* (and *Howell*) are distinguishable because the defenses here are not based upon the terms contained in the Restated Agreement. *Gulf Life*, however, is not distinguishable: defendants here are claiming waiver and estoppel, just as the defendant did in *Gulf Life*. The FDIC's argument here that defendants' assertion of these defenses is just a specious rephrasing of their agreement-based defense would be equally applicable to the defendant in *Gulf Life*. While the court in *Gulf Life* never discussed this point, obviously the banks' retention of 65 percent of the premiums resulted from an unwritten agreement with the defendant permitting them to do so. Therefore, if *Gulf Life* was decided correctly, defendants here should be permitted to raise defenses based upon Continental's conduct.

We believe that *Gulf Life* was incorrectly decided. Under the circumstances of these note enforcement cases, waiver and estoppel theories, although technically based on the banks' conduct, really are arguments that a partially performed agreement should lie outside the reach of § 1823(e). The defendants' answer and counterclaim here are, as is indicated *supra* at 3, filled with references to Continental's "representations," "understandings," and unwritten "agreements" not to enforce the written terms of the Restated Agreement. Their "conduct" based allegations are merely assertions that Continental and defendants performed part of their oral agreement. .

In *FDIC v. Vogel*, 437 F.Supp. 660 (E.D. Wis.1977) (cited with approval in *Howell*, 655 F.2d at 747), the court stated that partial performance cannot be used to make an agreement enforceable under § 1823(e): "To judicially engraft an exception based on partial performance of an oral contract with the closed bank or detrimental reliance on an oral promise made by the closed bank is simply to ignore the clear phrasing of the statute." *Vogel*, 437 F.Supp. at 663. In *First Mortgage Investors*, the court held that the defendant could not raise against the FDIC estoppel and waiver defenses based on the bank's conduct:

> To permit the wrongdoing or waiver of [the bank] to affect the FDIC would deprive the FDIC of the benefits of section 1823(e). This Court will not and does not interpret section 1823(e) to give effect to the validity of secret agreements when the party bank acts wrongfully or in contravention of the agreement.... The defense of estoppel is purely specious.

*First Mortgage Investors*, 485 F.Supp. at 454.

We believe that the best explanation of which defenses are barred by § 1823(e) is found in *Hatmaker*. There, the court found that· the defendant could not use a fraud in the inducement defense under § 1823(e) because, unlike *Gunter*, the bank's fraud went to its future conduct. When a bank makes false statements, not related to a promise, to induce a party to execute a note, such as misrepresenting that it is in sound financial condition, then no side agreement exists, and § 1823(e) is inapplicable. When, however, the bank promises to perform in the future, for example, promising to lend the maker more money in the future, the promise does constitute a side agreement, governed by § 1823(e). The court must look at the "es-

---

**3.** The FDIC also notes that in both *Gulf Life* and *Gunter* the courts ultimately held in favor of the FDIC, basing their rulings on federal common law, and, therefore, their statements on § 1823(e) are mere dicta.

sence" of the maker's defense to determine whether the defense really involves a side agreement:

> We would be allowing [the defendant] to make an "end run" around section 1823(e) if we allowed him to avoid the effect of section 1823(e) by dressing his breach of the oral agreement up in the garb of fraud in the inducement.

*Hatmaker*, 756 F.2d at 37.

Here, defendants are dressing their breach of oral agreement defense up in the garb of waiver and estoppel. The essence of their defense is that Continental collaterally agreed not to enforce the written terms of the Restated Agreement. *See* First Affirmative Defense, ¶¶ 2, 3, 5; Counterclaim, ¶¶ 9, 10, 14, 19, 23. That is why one of their affirmative defenses (Third) and three of their four counterclaim counts (Counts I–III) are based explicitly on Continental's alleged breach of their collateral agreement. Defendants have relied upon the same facts to support their breach of contract claims and to support their waiver and estoppel claims. *See* First through Third Affirmative Defense (all rely exclusively on factual allegations asserted in ¶¶ 1–8 of the First Affirmative Defense). Therefore, we hold as a matter of law that defendants cannot use any of these three defenses (breach of the collateral agreement, waiver or estoppel), whether raised as affirmative defenses or in their counterclaim.

**Federal Common Law**

Alternatively, even if technically § 1823(e) or *D'Oench* does not apply to the fact situation alleged by defendants, we believe that federal common law and the federal banking policy evinced in § 1823(e) and *D'Oench* would preclude assertion of the defendants' defenses under the circumstances of this case.

D'Oench and § 1823(e) demonstrate that there is a policy in federal banking law to the effect that the FDIC should not be bound by anything outside a bank's loan documents when it purchases those documents. *See D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679 (federal policy to protect FDIC and the public funds which it administers against misrepresentations in the portfolio of banks); *Van Laanen*, 769 F.2d at 667 (same). Typically, the FDIC must move quickly in buying a bank's assets, and it should not be obliged to rummage through a bank's records to find the hidden value of the notes. *See Wood*, 758 F.2d at 161. *See also Harrison*, 735 F.2d at 412–13 n. 6 (federal policy to promote stability of nation's banking system by facilitating FDIC's smooth acquisition of assets).[4] Therefore, the policy supporting FDIC protection in collateral agreement situations applies equally to all situations in which the maker's defense is based on something, representations or conduct, outside of the note itself.

From one perspective, it may seem harsh to charge a debtor with obligations his lender cannot enforce against him, especially when the debtor acted in good faith and the FDIC knew of the actual facts

---

**4.** The defendants argue that this policy is not furthered in the instant case, because the FDIC's acquisition of Continental's loans was not a typical "purchase and assumption" agreement, and courts, applying federal common law and discussing the need for speed have only considered such transactions. Because the considerations favoring FDIC protection in purchase and assumption agreements also are present in this acquisition, we find this distinction immaterial.

Purchase and assumption transactions occur when a bank actually fails, and the FDIC purchases the assets of the failed bank that no other bank wishes to buy. *See Merchants National Bank*, 725 F.2d at 637–38. Here, Continental did not actually fail. Rather, the FDIC bought the bank's assets to avoid failure. *See* Plaintiff's

Memorandum in Support, Exh. H. We fail to see the significant conceptual or practical difference between these two types of purchases for the purpose of determining the amount of protection the FDIC should receive in purchasing the assets. Both are designed to stabilize the banking industry, protect investors and public funds, and both must be carried out with speed. The Continental assistance plan involved the FDIC's acquisition of $3 billion (book value) of troubled loans (involving approximately 800 separate loans) over a course of weeks. Reply Memorandum of FDIC at 15–16. The policy allowing the FDIC to rely on loan documents in purchase and assumption transactions should therefore also apply to the instant acquisition.

when it purchased his note. But the inequity of this result in a non-agreement situation is no more inequitable than in an agreement or scheme situation. Yet, under *D'Oench* and § 1823(e), FDIC knowledge and maker good faith are irrelevant.

Here, just as in *D'Oench* and § 1823(e) situations, the defendants knew that their claim not to be bound by the written terms of the Restated Agreement was not supported or memorialized in any loan document meeting § 1823(e)'s requirements. We believe the principles behind *D'Oench* and § 1823(e) extend beyond agreement situations and cover bank conduct situations as well.

**Effect of Bar of Defense**

Since defendants cannot use breach of collateral agreement, waiver or estoppel arguments against the FDIC's enforcement of their note and guaranty, and they have admitted that the agreement, note and guaranty sued upon is genuine and outstanding, it appears not only that their defenses and counterclaim should be dismissed, but that summary judgment should be granted in the FDIC's favor as well. But we will give the defendants a last opportunity to raise any defense outside the three barred by our ruling today.

**CONCLUSION**

Summary judgment is granted in favor of the FDIC to the extent that defendants seek to assert defenses or claims based upon a collateral agreement with Continental, waiver or estoppel. Defendants are given until December 23, 1985, to file a memorandum pointing out what fact issues remain which preclude complete summary judgment in the FDIC's favor. If defendants do not file a memorandum by December 23, 1985, the FDIC will be granted summary judgment on its claim, and the FDIC should submit an order to that effect by January 9, 1986, indicating the amount owed by the defendants, including any interest and attorneys fees due. If fees are claimed, a separate fee petition should be filed by January 9, 1986. Defendants will have until January 21, 1986, to file a memorandum contesting the amount asserted to

be due in the FDIC's order. A status hearing will be set to discuss any remaining claims by the defendants against Continental.