913 F.2d 487
 59 USLW 2170
 FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate
Capacity, Appellee,
v.
Stanley KASAL, Oather Martin, Jr., George Ruzicka, d/b/a
Ruzicka Brothers, Oather Martin, Sr., and Francis
Kasal, Appellants.
 No. 89-5491MN.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1990.
Decided Aug. 31, 1990.
 
 Pete Kasal, Hutchinson, Minn. (Keefe & Kasal, Hutchinson, Minn.; Christine L. Meuers, and Curtin & Barnes, Minneapolis, Minn., on the brief), for appellants.
 Brian E. Palmer, Minneapolis, Minn. (Christopher J. Riley, and Dorsey & Whitney; Ann S. DuRoss and E. Whitney Drake, on the brief), for appellee Federal Deposit Ins. Corp.
 Before LAY, Chief Judge, HEANEY and TIMBERS*, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Appellants Stanley Kasal, Oather Martin, Jr., George Ruzicka, d/b/a Ruzicka Brothers, Oather Martin, Sr., and Francis Kasal ("appellants") appeal from an order entered July 14, 1989, in the District of Minnesota, Harry H. MacLaughlin, District Judge, granting the motions of appellee Federal Deposit Insurance Corporation ("FDIC") for summary judgment, to dismiss with prejudice appellants' counterclaims against the FDIC in its corporate capacity ("FDIC-corporate"), and to dismiss without prejudice appellants' counterclaims against the Citizens State Bank of Gibbon, Minnesota ("Bank") and against the FDIC in its capacity as receiver of the failed Bank ("FDIC-receiver").
 
 
 2
 On appeal, appellants claim that the district court erred in holding (1) that 12 U.S.C. Sec. 1823(e) (1988) and federal common law, see D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), precluded their defense of payment; (2) that there was no genuine issue of material fact precluding summary judgment; and (3) that appellants' counterclaims should be dismissed for lack of subject matter jurisdiction.
 
 
 3
 For the reasons which follow, we affirm the order of the district court on the first and second claims stated above. With respect to the third claim, we hold that a statutory amendment provides subject matter jurisdiction over appellants' counterclaims against the FDIC-receiver. Addressing those claims, we dismiss them with prejudice.
 
 I.
 
 4
 We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. Since this is an appeal from a summary judgment in favor of the FDIC, we review the facts in the light most favorable to appellants.
 
 
 5
 This appeal arises from eight related actions filed by the FDIC seeking to collect on promissory notes executed by appellants in favor of the Bank. The FDIC, in its corporate capacity, sought recovery after each appellant defaulted on his obligation on the notes.
 
 
 6
 Appellant Francis Kasal ("Kasal") was a customer and depositor of the Bank from 1965 to 1986. At one time he was the largest single customer of the Bank, entering into scores of financial transactions involving millions of dollars. He also was involved in several personal financial transactions with Dennis Albertson, the president of the Bank.
 
 
 7
 Over the course of Kasal's dealings with the Bank, a pattern developed whereby the Bank would issue general debits against Kasal's checking account and would apply the proceeds to his notes. Albertson repeatedly assured Kasal that the debits on his accounts had been applied properly to his obligations. Further, Kasal made most of his deposits directly through Albertson and relied on Albertson to deposit the funds in his accounts.
 
 
 8
 During 1983, 1984, and 1985, Albertson repeatedly informed Kasal that he was over the Bank's lending limit. Albertson also told him that the Bank would lend additional amounts if he could obtain the signatures of friends or relatives on additional notes. Thereafter, with the advice and encouragement of Albertson, Kasal obtained the signatures on various notes of appellants Stanley Kasal (his cousin), Oather Martin, Sr. (father-in-law), Oather Martin, Jr. (brother-in-law), and George Ruzicka (uncle). In each instance, appellants were told by Albertson and Kasal that they would not be required to repay the loan, but that the Bank would look solely to Francis Kasal for repayment. Certain of the appellants were induced similarly to execute notes on behalf of Albertson. No appellant received the proceeds of these loans, which totaled over $500,000.
 
 
 9
 Kasal directed Albertson to apply money toward appellants' obligations to the Bank on numerous occasions between 1983 and 1986. Kasal developed suspicions about the handling of his finances in 1986 when he discovered that many of the notes that he and the other appellants had signed with the Bank were not being paid in accordance with his directives. In late 1986, Kasal contacted the Minnesota State Banking Commissioner and the FDIC, requesting an examination of his accounts with the Bank. In May and June of 1987, Kasal met with FDIC examiners and provided them with information. Ultimately, Albertson was convicted of bank fraud, in part for pocketing the funds given him by Kasal. He currently is serving time in a federal prison.
 
 
 10
 The Bank filed separate lawsuits in the state court against appellants in July, 1987, seeking to collect on the notes executed in favor of the Bank. Each appellant had defaulted on his obligation on the note. Appellants interposed answers alleging the affirmative defenses of lack of consideration, accord and satisfaction or payment, fraud in the inducement, and fraud in the factum. They also asserted counterclaims alleging breach of contract, negligence, promissory estoppel, and misrepresentation.
 
 
 11
 On March 18, 1988, the Minnesota State Commerce Commissioner determined that the Bank was insolvent, ordered the Bank closed, and appointed the FDIC as receiver. The FDIC-receiver sold certain assets of the Bank, including the notes here involved, to the FDIC-corporate. The FDIC-corporate then moved to be substituted for the Bank as the real party in interest in the state court cases. These motions were denied. The state court, however, did permit the FDIC to intervene as a party plaintiff. The FDIC then removed the cases to the federal district court pursuant to 12 U.S.C. Sec. 1819 (1988) and 28 U.S.C. Sec. 1446 (1988).
 
 
 12
 The FDIC's complaint alleged that appellants executed various notes in favor of the Bank which the FDIC now owns and that appellants defaulted on the notes. The FDIC sought to collect on the notes and to foreclose on any property given as security for the notes. In response, appellants asserted the affirmative defenses and counterclaims they had raised in the state court. The FDIC moved for summary judgment on the notes executed by appellants and sought dismissal of the counterclaims asserted by appellants against the Bank and the FDIC.
 
 
 13
 In an order entered July 14, 1989, the district court granted the FDIC's motions for summary judgment, holding that appellants' defense of payment was barred by D'Oench, Duhme and 12 U.S.C. Sec. 1823(e). The court also dismissed with prejudice appellants' counterclaims against the FDIC-corporate, holding that the FDIC-corporate was not answerable for the acts of the Bank. Finally, the court dismissed without prejudice for lack of subject matter jurisdiction appellants' counterclaims against the Bank and against the FDIC-receiver.
 
 
 14
 This appeal followed.
 
 II.
 
 15
 Our standard of review of the district court's grant of summary judgment is well-settled: we apply the same standard as that applied by the district court. Meyer v. Barnes, 867 F.2d 464, 466 (8th Cir.), cert. denied, --- U.S. ----,110 S.Ct. 86, 107 L.Ed.2d 51 (1989). We therefore will affirm the district court's grant of summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Id. (citing Fed.R.Civ.P. 56(c)); see also FDIC v. Cardinal Oil Well Servicing Co., 837 F.2d 1369, 1371 (5th Cir.1988) ("Typically, suits on promissory notes provide fit grist for the summary judgment mill.").
 
 
 16
 When considering a summary judgment motion, a court must determine whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250,106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court's role is not to weigh the evidence, but to determine whether there is a genuine factual conflict. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). In making this determination, the court must view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences that can be drawn from the facts. Id.
 
 III.
 
 17
 With the foregoing in mind, we turn first to the affirmative defenses asserted by appellants with respect to their liability on the notes. At the outset, we observe that appellants have dropped their defenses of failure of consideration, fraud in the inducement, and fraud in the factum. Those defenses were waived for purposes of this appeal.
 
 
 18
 (A)
 
 
 19
 Appellants now contend only that the FDIC cannot recover the full amount of the notes because Kasal made numerous payments, pursuant to their secret unwritten side agreements, intended to be applied to appellants' indebtedness, that were later misappropriated by Albertson. We disagree. We hold that Sec. 1823(e) bars appellants from raising any aspect of their secret side agreements with the Bank as a defense to the FDIC's claims on the notes.
 
 
 20
 The controlling statute here involved, Sec. 1823(e), provides:
 
 
 21
 "No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it ... shall be valid against the [FDIC] unless such agreement--(1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution."
 
 
 22
 We recently addressed the reach of Sec. 1823(e) in FDIC v. Krause, 904 F.2d 463 (8th Cir.1990), a case with facts similar to the instant appeal. In Krause, the debtors argued that their debts had been paid and settled pursuant to a settlement agreement with the bank president. The agreement was not reflected in the minutes of the board of directors or loan committee. We affirmed the grant of summary judgment in favor of the FDIC, holding that the debtors could not rely in any part on their agreement with the bank president because that agreement failed to comply with the requirements of Sec. 1823(e).
 
 
 23
 In the instant case, as in Krause, appellants made secret unwritten side agreements that tend "to diminish or defeat the interest" of the FDIC. They now complain that Albertson failed to perform those secret side agreements, because he did not deposit in the Bank the payments allegedly given him by Kasal. Yet appellants do not, and could not, assert that their agreements with Albertson met the strict terms of Sec. 1823(e). Langley v. FDIC, 484 U.S. 86, 95, 108 S.Ct. 396, 403, 98 L.Ed.2d 340 (1987) ("Congress opted for the certainty" of the "categorical recording scheme" of Sec. 1823(e)). Their agreements were not in writing, never were approved by the Bank's board of directors or loan committee, and never were maintained as part of the Bank's records. We therefore hold that appellants' defense of payment, based on secret unwritten side agreements, is barred by Sec. 1823(e). Appellants may not rely in any part on those agreements, because those agreements tend "to diminish or defeat the interest" of the FDIC and do not meet the strict categorical terms of Sec. 1823(e).
 
 
 24
 The policy behind Sec. 1823(e) supports our conclusion that the FDIC should not be bound by these transactions. In Langley, supra, 484 U.S. at 91-92, 108 S.Ct. at 401-402, the Supreme Court explained that Sec. 1823(e) serves two purposes: "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets" and to "ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." To allow appellants the benefit of the alleged unapplied payments would undermine the statute's purpose of "allow[ing] federal and state bank examiners to rely on a bank's records". Id. at 91, 108 S.Ct. at 401; see also FDIC v. La Rambla Shopping Center, Inc., 791 F.2d 215, 219 (1st Cir.1986) (without protection of Sec. 1823(e) FDIC would be subject to various, and varying, state laws).
 
 
 25
 Moreover, when an insured bank closes, the FDIC must determine whether to liquidate the failed bank or to provide financing for a purchase and assumption transaction. Langley, supra, 484 U.S. at 91, 108 S.Ct. at 401. This evaluation must be made " 'with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services.' " Id. (citation omitted). The Court in Langley recognized that the FDIC would be unable to perform this evaluation if seemingly unqualified notes were subject to undisclosed conditions. Id. at 92, 108 S.Ct. at 401-402. Accordingly, appellants' defense of payment, based on their secret unwritten side agreements, is contrary to the purposes of Sec. 1823(e).
 
 
 26
 (B)
 
 
 27
 Our holding--that Sec. 1823(e) bars appellants from raising any aspect of their secret unwritten side agreements with the Bank as a defense to the FDIC's claims on the notes--is consistent with the common law doctrine of D'Oench, Duhme, which provides a viable independent basis for invalidating collateral agreements against the FDIC even after the enactment of Sec. 1823(e). D'Oench, Duhme, supra, 315 U.S. at 456-62, 62 S.Ct. at 678-82; FDIC v. Vestring, 620 F.Supp. 1271, 1273-74 (D.Kan.1985). In D'Oench, Duhme, the Supreme Court held that an accommodation maker was estopped from raising defenses of failure of consideration and an understanding with the bank that the note would not be enforced. D'Oench, Duhme, supra, 315 U.S. at 456-62, 62 S.Ct. at 678-82. The Court held that "[i]t would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled." Id. at 460, 62 S.Ct. at 681; see also Firstsouth, F.A. v. Aqua Construction, Inc., 858 F.2d 441, 443 (8th Cir.1988) (D'Oench, Duhme estops debtors from asserting secret side agreements regarding the instruments in question); FDIC v. R-C Marketing and Leasing, Inc., 714 F.Supp. 1535, 1543 (D.Minn.1989) (D'Oench, Duhme barred makers from alleging that they relied on oral representations that they would not be liable on instruments). The common law doctrine of D'Oench, Duhme provides a separate and independent ground for holding that appellants may not rely on their secret unwritten side agreements.
 
 
 28
 Appellants contend that their defense of payment arises from the very same agreements that the FDIC is attempting to enforce. In support of this contention, appellants rely on Riverside Park Realty Co. v. FDIC, 465 F.Supp. 305 (M.D.Tenn.1978). That reliance is misplaced. In Riverside Park, the plaintiffs commenced an action seeking to enjoin the FDIC from foreclosing under a deed of trust on real property. The FDIC acquired the deed of trust and the note it secured from the FDIC as receiver of a failed bank. The plaintiffs argued, and the court agreed, that a foreclosure sale of the property should be enjoined because they asserted a breach of contract counterclaim, based on the lender's pre-closing conduct, which met or exceeded the FDIC's claim on the note. The court specifically rejected the FDIC's argument that Sec. 1823(e) barred the counterclaim, since it would have the effect of diminishing the FDIC's interest in the deed of trust.
 
 
 29
 The crucial factor in Riverside Park was that the loan agreement in that case was a written agreement expressly incorporated by reference in the deed of trust on which the FDIC sought to foreclose. The loan agreement therefore was part of the same agreement that the FDIC sought to enforce, id. at 313, and an examination of the face of the deed of trust should have put the FDIC on notice as to the existence of the loan agreement. In the instant case, by contrast, appellants' payment argument cannot be established without reference to their secret unwritten arrangements with Albertson, which were not recorded on the books of the Bank and of which the FDIC had no knowledge. Section 1823(e) bars reliance on such arrangements. Id. (quoting FDIC v. Vogel, 437 F.Supp. 660, 663 (E.D.Wis.1977)) (Sec. 1823(e) "operates to insure that the FDIC ... can rely on the [closed] bank's records and will not be risking an impairment of the assets through an agreement not contained in the bank's records"). Indeed, the court in Riverside Park was careful to distinguish the situation before it from the typical "collateral or secret agreement" from which the FDIC is protected by Sec. 1823(e). Id. at 313.
 
 
 30
 Similarly, the district court decisions in FDIC v. Kuang Hsung Chuang, 690 F.Supp. 192 (S.D.N.Y.1988); FDIC v. Manatt, 688 F.Supp. 1327 (E.D.Ark.1988); and FDIC v. Wright, 684 F.Supp. 536 (N.D.Ill.1988), are distinguishable from the instant case. In Chuang and Manatt, the banks' records reflected the payments made by the debtors, and in Wright the FDIC offered no evidence to counter the debtor's claim that she paid the note in full. In each case the FDIC was or should have been on notice as to the payments. In the instant case, by contrast, the FDIC had no knowledge of payments made by any of the appellants. Cf. Langley, supra, 484 U.S. at 91, 108 S.Ct. at 401 (one purpose of Sec. 1823(e) is to allow "bank examiners to rely on a bank's records"). In any event, to the extent that those district court decisions conflict with our holding that appellants may not raise any aspect of their secret unwritten side agreements against the FDIC, we reject those decisions as contrary to the language and purposes of Sec. 1823(e) and D'Oench, Duhme.
 
 
 31
 As a final consideration, we address appellants' contention that several commentators have recently criticized the broad reach of Sec. 1823(e) and D'Oench, Duhme, and the protection they afford the FDIC. E.g., Note, Borrower Beware: D'Oench, Duhme and Section 1823 Overprotect the Insurer When Banks Fail, 62 S.Cal.L.Rev. 253, 318-19 (1988) ("courts have lost sight of the equitable roots of ... the D'Oench, Duhme doctrine ... and have expanded greatly the protection afforded the bank insurer"); Langley v. FDIC: FDIC Superpowers--A License to Commit Fraud, 1989 Ann.Rev.Banking L. 559, 580 (describing Langley as "endors[ing] a policy redistributing the cost of bank failures from the taxpayers to individuals whose liability may be significant"). While we agree that the result in the instant case may appear harsh or inequitable to some, we nevertheless are constrained by both the statute and federal common law to reject appellants' defense of payment, since that defense is based upon secret unwritten side agreements never entered in the records of the Bank.
 
 
 32
 We hold that Sec. 1823(e) and the common law doctrine of D'Oench, Duhme bar appellants from raising any aspect of their secret unwritten side agreements with the Bank as a defense to the FDIC's claims on the notes.
 
 IV.
 
 33
 We turn next to the contention of appellant Ruzicka that he has offered evidence directly in conflict with the evidence offered by the FDIC, and that the district court therefore erred in granting summary judgment. Ruzicka contends that the amount of his debt to the Bank is in question, and that this dispute raises a genuine issue of material fact. We disagree.
 
 
 34
 There is no genuine issue as to Ruzicka's liability. Ruzicka maintains that a loan payment of $45,945.95 was not properly credited against his loan. He simply misstates the record. The FDIC submitted an affidavit which indicates that Bank records indeed credited that amount to his account. Ruzicka submitted no evidence to the contrary.
 
 
 35
 We hold that there is no genuine issue of material fact concerning the amount of Ruzicka's debt to the Bank to defeat the grant of summary judgment.V.
 
 
 36
 This brings us to appellants' final argument: that the district court erred in dismissing their counterclaims against the Bank and against the FDIC-receiver. (Appellants do not appeal from the court's decision to dismiss with prejudice their counterclaims against the FDIC-corporate). Appellants filed counterclaims alleging breach of contract, negligence, promissory estoppel, and misrepresentation, all arising from their secret unwritten side agreements with Albertson and Albertson's subsequent misappropriation of Kasal's loan payments. The district court dismissed these counterclaims for lack of subject matter jurisdiction, without prejudice to asserting the claims in the state court.
 
 
 37
 The district court properly based its ruling that it lacked subject matter jurisdiction on 12 U.S.C. Sec. 1819 (Fourth) (1982), as that statute read at the time of the decision. Under that statute, the district courts had no jurisdiction over suits, such as the instant one, "to which the [FDIC] is a party in its capacity as receiver of a State bank and which involve[ ] only the rights or obligations of depositors, creditors, [or] stockholders. ..." Id.
 
 
 38
 Section 1819 (Fourth) of the Federal Deposit Insurance Act has since been amended. 12 U.S.C. Sec. 1819, as amended by Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73, Sec. 209(3) and (4), 103 Stat. 183, 216-17 (1989). In view of FIRREA, we need not reach the issue of the district court's dismissal of the counterclaims for lack of subject matter jurisdiction. Under amended Sec. 1819 (Fourth), the federal courts now have jurisdiction to hear counterclaims against the FDIC as receiver of a failed bank.
 
 
 39
 Although FIRREA became law after the district court in the instant case rendered its decision, we will consider the effect of the amendments and apply the law as it now exists. Generally a court must apply the law in effect at the time it renders its decision unless to do so would be unjust or contrary to statutory or legislative direction. See Bradley v. School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); Thurman v. FDIC, 889 F.2d 1441, 1444 (5th Cir.1989) (applying FIRREA's Sec. 1819 amendments to cases pending on appeal when FIRREA became law); Triland Holdings & Co. v. Sunbelt Service Corp., 884 F.2d 205, 207 (5th Cir.1989) (same).
 
 
 40
 Normally, at this point we would remand the case so that the district court could rule on the merits, but we need not do so where, as here, "the record permits only one resolution of the ... issue." Pullman-Standard v. Swint, 456 U.S. 273, 292, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982).
 
 
 41
 Appellants' counterclaims against the FDIC-receiver and against the Bank are barred by Sec. 1823(e), which also was amended by FIRREA after the district court handed down its decision. 12 U.S.C. Sec. 1823(e), as amended by FIRREA, Pub.L. No. 101-73, Sec. 217(4) (1989); see also Astrup v. Midwest Federal Savings Bank, 886 F.2d 1057, 1059 (8th Cir.1989) (common law doctrine of D'Oench, Duhme also bars counterclaims against the FDIC as receiver). Beighley v. FDIC, 868 F.2d 776, 784 (5th Cir.1989) (D'Oench, Duhme bars defenses and affirmative claims against the FDIC as receiver). In no event can appellants make good their counterclaims against the FDIC-receiver or against the Bank, since those claims are based on their secret unwritten side agreements with Albertson. To permit appellants to pursue their counterclaims would "diminish or defeat" the interest of the FDIC in its receivership capacity in the notes, and Sec. 1823(e) bars that.
 
 
 42
 We hold that under amended Sec. 1819 (Fourth) appellants' counterclaims against the Bank and against the FDIC-receiver may now be heard in the federal court. We also hold that appellants' counterclaims, based on their secret unwritten side agreements with Albertson, are barred by amended Sec. 1823(e). We therefore dismiss appellants' counterclaims with prejudice.
 
 VI.
 
 43
 To summarize:We hold that the district court properly granted appellee's motions for summary judgment, since Sec. 1823(e) and the common law doctrine of D'Oench, Duhme bar appellants from raising any aspect of their secret unwritten side agreements with the Bank as a defense to the FDIC's claims on the notes. We also hold that there is no genuine issue of material fact concerning the amount of Ruzicka's debt to the Bank to defeat the grant of summary judgment. Finally, we hold that appellants' counterclaims against the Bank and against the FDIC-receiver may now be heard in the federal court, and we dismiss those counterclaims with prejudice.
 
 
 44
 Affirmed.
 
 
 45
 HEANEY, Senior Circuit Judge, dissenting.
 
 
 46
 There are two issues in this case: (1) whether the FDIC is bound by an unrecorded agreement between Dennis Albertson, the president of the Citizens State Bank of Gibbon, Minnesota, and Francis Kasal that the bank would look to Francis Kasal for payment of promissory notes signed by Bruce Kasal, Stanley Kasal, John D. Schilling, Roger Schaufler, George Ruzicka, and Grant G. Knutson;[1] and (2) whether Francis Kasal should be entitled to prove the true balance on the notes.
 
 
 47
 I agree with the majority that the FDIC is not bound by the secret agreement between Albertson, Francis Kasal, and borrowers other than Francis Kasal, and that each borrower is obligated to pay the amount due on the note signed by him. Furthermore, Francis Kasal is obligated on the entire amount due.
 
 
 48
 I cannot, however, agree that Francis Kasal is not entitled to prove the true balance outstanding. He submitted an affidavit dated February 26, 1989 in which he stated that on three occasions, June 10, 1982, June 22, 1982, and August 20, 1983, he signed promissory notes to the bank totaling $160,000. Jt. App. at 468. No deposits were made to his accounts for the sums involved, and no credits were given on earlier notes. Id. Moreover, he received no cash from the bank. Id. Kasal's affidavit further recited that on two occasions, July 5, 1982 and December 20, 1982, a total of $95,000 was taken from Francis Kasal's account without his consent. Id. The affidavit also recounts that on March 24, 1983, Kasal gave Albertson, the president of the bank, $90,000 to deposit into Kasal's account. Id. No such deposit was made. The affidavit finally recounts that on several occasions from January 1981 to October 1985 Kasal's account was debited by approximately $180,000 without corresponding credits being given for the notes payable or without any other explanation as to why the accounts were debited. Id. at 469. Kasal's theory as to these transactions was that Albertson had appropriated in excess of $500,000 from his account through the transactions noted above and that the FDIC should credit Kasal for these sums against the notes signed by him and the other debtors.[2]
 
 
 49
 In my view, Francis Kasal is entitled to prove at trial that Albertson had in fact misappropriated all or a part of the $500,000 and that these sums should have been credited to the notes signed by him and the other borrowers. It follows that the district court erred in granting FDIC's motion for summary judgment. Under my view, the FDIC would remain free to collect the balance due from Francis Kasal or the others who had signed the notes, but in no event should it be permitted to recover more than the amount actually due. A bank customer should not be expected to protect the FDIC against an officer or employee who misappropriates that customer's funds.
 
 
 50
 I have carefully read each of the cases cited by the majority in its opinion and do not find authority in any of them for the proposition that Francis Kasal is not entitled to prove the true balance of his debt owed.
 
 
 51
 Certainly, neither section 1823(e) or Langley v. Federal Deposit Insurance Corp., 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), supports the majority's view. Section 1823(e) provides as follows:
 
 
 52
 No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.
 
 
 53
 This section, as the majority notes, permits the FDIC to recover the full balance due on the notes signed by Francis Kasal and his friends and relatives because the side agreements reached did not meet writing, approval, and filing requirements of 12 U.S.C. Sec. 1823(e). Thus, each person who signed a note is liable for the balance due on the note signed, and Francis Kasal is jointly and severally liable for the balance due on all the notes signed. The section, however, does not place the risk of loss on a bank customer where a director, officer, or employee of the bank has misappropriated funds from that customer.
 
 
 54
 The Supreme Court in Langley held that section 1823(e) has two purposes: (1) to allow bank examiners to rely on a bank's record in evaluating the worth of a bank's assets, and (2) to require agreements to be properly recorded so that terms other than those expressed in an agreement cannot be fraudulently inserted in an agreement when a bank heads for failure. Id. at 91-92, 108 S.Ct. at 401-402. The Langley Court reasoned:
 
 
 55
 Certainly one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in D'Oench, Duhme) or of the truthfulness of a warranted fact.
 
 
 56
 Id. at 93, 108 S.Ct. at 402. The thrust of Langley is that only those who participate in the secret scheme or arrangement are to be prejudiced. Nothing in Langley requires that bank customers, rather than the bank or the FDIC, should bear the loss if a bank officer or employee misappropriates funds from a customer.
 
 
 57
 It follows that where a bank customer has neither authorized, ratified, nor participated in the fraudulent action resulting in the loss, the FDIC, rather than the depositor, should bear that loss. Here, no relationship between Albertson's misappropriation of funds and the side agreements exists.[3] One does not need to prove the existence of the side agreements to prove that payments were made. It is a perversion of justice to hold the borrowers responsible for funds misappropriated by a bank officer, funds which should have been applied to the payment of the notes.[4]
 
 
 58
 In D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the debtor alleged that the note in question was given with the understanding that no suit would be brought thereon. The Court rejected this defense. I agree that the defense raised by the debtors other than Francis Kasal should be reversed here for the same reason: that Kasal was alone responsible for repayment of these debts is not a valid defense. The debtor in D'Oench, Duhme, however, did not assert that he had actually paid the note in question.
 
 
 59
 In FDIC v. Kuang Hsung Chuang, 690 F.Supp. 192 (S.D.N.Y.1988), the court considered a number of transactions and rejected defenses based on fraud, misrepresentation, conflicts of interest, and collateral unwritten and unannounced agreements. On the other hand, it held that if the debtor could prove actual payment, that would constitute a defense. It stated:
 
 The T & C Note and Mortgage Note
 
 60
 As stated earlier, defendants have the burden of establishing their defense with evidence sufficient for a reasonable trier of fact to return a verdict in their favor. Defendants admit that the Note and Mortgage Note were duly executed, but argue that the documents provided in Ms. Teng's Supplemental Affidavit raise genuine issues of material fact concerning repayment of the loans. These documents, described in detail above, are generally inconclusive, though they do establish that the Bank credited T & C for "repayment" of something.
 
 
 61
 Though the documents are confusing and may not in the final analysis prove anything, this Court believes summary judgment is not warranted on the question of the amount owing....
 
 
 62
 Id. at 199.
 
 
 63
 It took the same position respecting an unrelated guaranty by the debtor on certain notes. It stated:
 
 
 64
 Ms. Teng does argue, however, that the monies owed to the Bank on these notes have been repaid, and that the obligations on the Unlimited Guaranty would thus be zero. While her premise is correct, she has not conclusively established how much was in fact borrowed or repaid, as discussed above. Consequently, plaintiff's motion for summary judgment is granted on the liability question, but denied on the question of the amount presently owing. As noted above, a Magistrate will conduct an inquest to determine the amount due, and Teng's estate will be liable for that amount.
 
 Id.[5]
 
 65
 In FDIC v. Wright, 684 F.Supp. 536 (N.D.Ill.1988), the FDIC brought an action to recover monies due and owing on four promissory notes. The FDIC moved for summary judgment. In contesting the motion on two of the notes, defendant maintained that both notes had been paid. She, however, had evidentiary support for her claims of payment on only one of the notes.
 
 
 66
 Regarding the claim of payment lacking evidentiary support, the court stated that "although Defendant contests the FDIC's motion for summary judgment by claiming that she had made partial payment on the relevant note, she provides no evidentiary support for the assertion. She bears the burden of persuasion for this defense." Id. at 540 (citing State Bank of Moline v. Young, 149 Ill.App.3d 460, 102 Ill.Dec. 839, 500 N.E.2d 732 (1986)). The FDIC's motion for summary judgment was granted on this count. Id.
 
 
 67
 Regarding the payment that was supported by evidence, the court stated:
 
 
 68
 Defendant contests summary judgment on the note on the ground that she has paid it in full. For this count, unlike the previous one, she supports this argument with her sworn affidavit to that effect. Nevertheless, the FDIC maintains that it is entitled to summary judgment on this count because Defendant concedes that she has no documentary evidence to support her argument and, in Illinois, such evidence is required to satisfy her preponderance burden.
 
 
 69
 . . . . .
 
 
 70
 In this case, the FDIC has pointed to no testimony at all that conflicts with Defendant's claim that she made full payment on the note. Nor has it pointed to any documentary evidence to that effect. Accordingly, a genuine issue as to a material fact exists, and summary judgment must be denied.
 
 
 71
 Id. (emphasis added). The court, relying on the defense of payment, denied FDIC's motion for summary judgment on this count. Id.
 
 
 72
 In FDIC v. Manatt, 688 F.Supp. 1327 (E.D.Ark.1988), prior to the closing of the bank, the defendant, pursuant to a written agreement with the bank, conveyed certain items of collateral to the bank that were liquidated and sold either by the bank or the FDIC. The proceeds received were only applied in partial satisfaction of defendant's indebtedness. However, the defendant claimed that this agreement was to satisfy completely his indebtedness to the bank. The court held that nowhere in the deed was it suggested that all of defendant's debt was to be forgiven. The court found that defendant's agreement with the bank for liquidation of collateral in satisfaction of the debt was not made contemporaneously with the bank's acquisition of the asset and therefore was invalid. 12 U.S.C. Sec. 1823(e)(2). As such, this "side" agreement was not enforceable against the FDIC. However, the FDIC did give defendant credit for the amount realized from the sale of his property.
 
 
 73
 At oral argument, FDIC cited FDIC v. Krause, 904 F.2d 463 (8th Cir.1990), in support of its position that section 1823(e) estops the defense of payment. I find no support in that opinion for the proposition that actual payment is not a defense. In Krause, the FDIC sought to collect only the difference between the amounts paid pursuant to the loan settlement agreement and the pre-settlement loan balance. Krause was required to pay that difference even though he had a private arrangement with the president of the bank that he would not have to do so. Krause never claimed that he had paid this difference. It thus seems to me that Krause fully supports the view that I urge in this dissent.
 
 
 74
 There is one final point that should be made. I sense that the FDIC, and perhaps the majority, takes the position that the unwritten agreement between Kasal, Albertson, and Kasal's friends and relatives with respect to the notes signed by the friends and relatives taints all other transactions, as a matter of law, with the bank. I reject this view. The language and the policy embodied in section 1823(e) are fully satisfied if the signers of the notes and Kasal are all held responsible for the payment of the notes. Simply stated, no reason exists for not giving Francis Kasal full credit for payments made. Since the affidavits establish a genuine dispute, the amount of these payments, if any, must be established at trial rather than on a motion for summary judgment.
 
 
 75
 To summarize, I do not disagree with the stated holding in this case that section 1823(e) and the common law doctrine of D'Oench, Duhme & Co. bars the debtors from raising the secret unwritten side agreements with the bank as a defense to the FDIC's claim on the notes. I do, however, disagree that section 1823(e) bars defendants from proving the true balance due on the notes. Thus, I respectfully dissent.
 
 
 
 *
 Of the Second Circuit, sitting by designation
 
 
 [1]
 The table below is taken from the February 14, 1989 affidavit of Patrick R. Mach, an FDIC examiner. Jt.App. at 482-83. It shows the balance due on each note as of that date
 Principal Interest Total
Bruce Kasal 108,936 55,839 164,775
Stanley Kasal 28,497 16,313 44,810
John D. Schilling 50,000 26,390 76,390
Roger Schaufler 25,000 12,708 37,708
George Ruzicka 221,452 64,253 285,705
Grant G. Knutson 50,000 25,562 75,562
Francis Kasal 501,473 241,109 742,582
 We note the dismissal of appellants Schilling and Knutson on June 6, 1990 and July 19, 1990, respectively, both on their own motions.
 
 
 [2]
 Albertson was indicted and convicted on several counts of misappropriation of bank funds. Some of the counts for which he was convicted were related to the transactions enumerated above
 
 
 [3]
 Section 1823(e) should not bar fraud in the inducement as a defense, and a fortiori, section 1823(e) should not necessarily bar misappropriation as a defense. The plain meaning and legislative history of section 1823(e) permit such a reading. See Note, Borrower Beware: D'Oench, Duhme and Section 1823 Overprotect the Insurer When Banks Fail, 62 So.Cal.L.Rev. 253, 308-311 (1988). Allowing these defenses will not open the floodgates of litigation because the equitable principles of D'Oench, Duhme still apply. See id. at 310. Thus, any bank customer who lent himself or herself to a scheme that as a result deceived the FDIC would be liable to the full amount of the debt as reflected in the bank records. Id. In this case, the defendants' original side agreements should be barred, but the defense arising from Albertson's misappropriation, in which none of the defendants participated, should not be barred
 
 
 [4]
 12 U.S.C. Sec. 1822(d) provides:
 (d) Withholding payments to meet liability to depository institution
 The Corporation may withhold payment of such portion of the insured deposit of any depositor in a depository institution in default as may be required to provide for the payment of any liability of such depositor to the depository institution in default or its receiver, which is not offset against a claim due from such depository institution, pending the determination and payment of such liability by such depositor or any other person liable therefor.
 Under this section, it was appropriate for the FDIC to offset any funds held by the bank on deposit for Francis Kasal against money owed by Kasal to the bank. The problem here is that the president of the bank misappropriated funds from Kasal's account. To the extent that Kasal can prove that funds from his account were misappropriated by a director, officer, or employee of the bank, he should be permitted an offset against the amount owed by him.
 
 
 [5]
 The majority distinguishes Chuang from the instant case stating that in Chuang the bank's records reflected the payments made by the debtors. As I read the record in Chuang regarding the T & C note, it is the same as it is here. The debtor on the T & C note established certain debits to his account through the use of personal bank records rather than official bank records and was permitted both to prove the purpose of these debits and to show that they were intended to be repayment on the note in question. Chuang, 690 F.Supp. at 199. This is all that Francis Kasal asks here