[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE #151
This motion to strike arises out of a foreclosure action. On August 24, 1990, the original plaintiff, The Connecticut Bank 
Trust Company, N.A. [CBT], filed a single count complaint against defendants Johnson Lee and the Bank Mart. In its single count complaint CBT alleges that Lee, for value received, promised to pay CBT the principal sum of $250,000.00 plus a variable rate of interest and that this debt was evidenced by a note. CBT alleges that a mortgage upon certain properties in Greenwich was granted to secure Lee's obligations pursuant to the note. CBT has attached the note and mortgage, both dated April 27, 1983, to the original complaint. CBT alleges that Lee is in default pursuant to the terms and conditions of the note and mortgage by virtue of his failure to make payments to CBT. CBT also alleges that the Bank Mart may claim a subsequent and subordinate interest in the mortgaged properties. CBT seeks a foreclosure of the mortgage.
On April 22, 1991, the court, Ryan, J., granted a motion to substitute the New Connecticut Bank and Trust Company, N.A. [NCBT] as plaintiff. On May 5, 1992, the court, Novack, J., granted a motion to substitute the Federal Deposit Insurance Corporation [FDIC] as receiver of NCBT as the new plaintiff.
In response to the complaint, and pursuant to a request to revise dated December 10, 1991, and the January 27, 1992 orders of the court, Nigro, J., Lee filed an amended answer, five special defenses and two counterclaims dated January 31, 1992. FDIC as receiver moves to strike Lee's special defenses and counterclaims dated January 31, 1992.
In his first special defense Lee alleges that by making demand on the note, plaintiff is acting in bad faith and has breached the implied covenant of good faith and fair dealing owed to Lee with regard to the note and that such actions should preclude plaintiff from making a demand for full payment.
In his second special defense Lee alleges that he had an CT Page 8481 agreement with CBT, which was both oral and in writing, separate and distinct from any obligations in the note, whereby CBT was to automatically deduct from Lee's checking account the monthly payment due to CBT pursuant to the note. Lee further alleges that CBT set off funds from the checking account in the approximate amount of $124,000.00 without notifying Lee. Lee alleges that CBT's actions should operate to extinguish or discontinue the monthly payments for some time since Lee has effectively prepaid the monthly interest due or significantly reduced the principal on the note. Lee alleges that the failure to notify him of the purported set off and the failure to instruct him regarding the future monthly payments should preclude plaintiff from claiming a default to the terms of the note.
In his third special defense Lee realleges the above agreement that CBT was to deduct money from Lee's checking account and that CBT and FDIC failed to notify Lee of the alleged setoff on his checking account. Lee alleges that plaintiff is acting in a commercially unreasonable matter, and has unclean hands that bar plaintiff from seeking the equitable remedy of foreclosure.
In his fourth special defense Lee alleges that by their actions towards Lee, CBT and FDIC have been engaged in unfair and deceptive trade practices, and that defendant is entitled to offset any debt allegedly due to the plaintiff by the damages lee has incurred due to the outrageous actions of CBT and FDIC.
In his fifth special defense Lee alleges that CBT made an improper setoff on one of Lee's checking accounts in the amount of $124,000.00 and failed to notify Lee of this action. Lee realleges the oral and written agreement distinct from the note, whereby monthly payments were to be deducted from the checking account. Lee alleges that the actions of CBT making a setoff on the account at issue and the FDIC's failure to notify Lee, deprived Lee of being cognizant that the monthly payments were not being made and that the note could be considered in default. Lee alleges that based on the above, plaintiff should be estopped from declaring the note in default and demanding full payment.
In count one, of Lee's two count counterclaim, he alleges the following. CBT setoff certain funds of Lee's checking account without notice and did not inform him as to what was the new balance on the note at issue. The failure of CBT and FDIC to notify Lee was improper. CBT had a separate agreement with Lee to automatically deduct the monthly payment due on the note. The actions of CBT and FDIC regarding the note, checking account and failure to honor the agreements that CBT had with Lee have been unconscionable and such actions constitute a breach of a duty of good faith and fair dealing. In count two of his counterclaim, Lee alleges that the actions by CBT and FDIC alleged in the first CT Page 8482 counterclaim constitute an unfair, unscrupulous, and deceptive business practice, as defined in General Statutes 42-110a, et seq. Lee claims that he has suffered damages.
FDIC moves to strike each of the special defenses and both counterclaims on the ground that they are legally insufficient pursuant to 12 U.S.C. § 1823(e) and the D'Oench, Duhme doctrine.
"Whenever any party wishes to contest . . . the legal sufficiency of . . . any . . . counterclaim . . . or . . . special defense . . . that party may do so by filing a motion to strike . . . ." Practice Book 152. "The motion to strike . . . admits all facts well pleaded." Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989).
"In ruling on a motion to strike the court is limited to the facts alleged in the [pleading]." Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185, (1988). A motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis supplied.) Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Id., 108-09.
FDIC argues that Lee fails to allege in each of his five special defenses and two counterclaims sufficient facts to constitute a cognizable defense or cause of action under the Financial; Institutions Reform, Recovery and Enforcement Acts of 1989 [FIRREA], specifically, 12 U.S.C. § 1823(e). Additionally, FDIC argues that Lee's special defenses and counterclaims rely on agreements which are not part of the plaintiff's records and which misled banking authorities, and as such cannot be asserted against the FDIC or a bridge bank under federal common law, specifically, the D'Oench Duhme doctrine.
 [T]he Supreme Court [in D'oench, Duhme Co. v. Federal Deposit Ins. Corp., 315 U.S. 447 (1942)] created the cornerstone for what has become a solid defense to many of the lender liability claims inherited by the FDIC upon its appointment as receiver of a failed financial institution. D'Oench involved a brokerage house which signed a note in favor of a banking institution solely for the purpose of allowing the bank to show an asset on its records; the bank and the brokerage agreed that the latter would not have to pay the note.
CT Page 8483 Federal Dep. Ins. Corp. v. Armstrong Mall Associates, Nos. 3:91 CV00736 (PCD), slip op. at 5-6 (D.Conn. July 21, 1992).
 [T]he Supreme Court in D'oench, Duhme Co. Inc. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956
(1942), held that there was `a federal policy to protect respondent [FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which respondent insures or to which it makes loans.' (Citation omitted.) The petitioner in D'Oench had argued that, at the time he made the note with the bank, the bank promised that it would not enforce the note. The Court held that this `secret agreement' could not be used as a defense, . . . because `it would tend to deceive the banking authorities.'
(Citations omitted.) FDIC v. Aetna Cas. Sur. Co, 947 F.2d 196,200 (6th Cir. 1991).
"The principle that notemakers may not rely upon fraudulent, unrecorded side agreements to avoid paying notes assigned to the FDIC, known generally as the D'Oench, Duhme doctrine, has been extended broadly in the last fifty years, both through evolving case law and through legislation." Federal Dep. Ins. Corp. v. Armstrong Mall Associates, supra, 6. The basic tenants of the D'Oench, Duhme doctrine has been codified in 12 U.S.C. § 1823(e), which provides as follows:
 No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11 [12 USCS 1821], either as security for a loan or by purchase or as a receiver of any insured depository institution, shall be valid against the Corporation unless such agreement —
(1) is in writing,
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
CT Page 8484 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
The Supreme Court in Langley v. FDIC, 484 U.S. 86, 91 (1987), "defined agreement broadly, holding that the terms as used in 1823(e) refers not only to the actual written contract between the parties, but also encompasses all conditions upon performance." Federal Dep. Ins. Corp. v. Armstrong Mall Associates, supra, 7.
 In Langley, supra, 484 U.S. at 91-92, the Supreme Court explained that 1823(e) serves two purposes: `to allow federal bank's records in evaluating the worth of the bank's assets' and to `ensure mature consideration of unusual loan transactions by senior bank employees, when a bank appears headed for failure.'
Federal Deposit Ins. Corp. v. Kasal, 913 F.2d 487, 490-91 (8th Cir. 1990), cert. denied 111 S.Ct. 1072 (1991).
"Since the Supreme Court decision in Langley, which addressed the FDIC's protection from certain claims when acting in its corporate capacity, congress has amended 1823(e) to extend those same protection [sic] to the FDIC when, as here, it acts in a receivership capacity." Federal Dep. Ins. Corp. v. Armstrong Mall Associates, supra, 8. "In their present forms, the common law D'Oench, Duhme doctrine and its statutory counterpart bar `the use of unrecorded agreements between the borrower and the bank as the basis for defenses or counterclaims against the FDIC.'" Id., quoting Bowen v. Federal Deposit Ins. Corp., 915 F.2d 1013, 1016
(5th Cir. 1990).
In his first special defense Lee alleges that by making demand on the note, plaintiff is acting in bad faith and has breached the implied covenant of good faith and fair dealing owed to Lee with regard to the note. Since Lee's first special defense is not based on any unrecorded side agreement between himself and the bank but rather is based on a defense that is derived from the note itself it is found that the D'Oench, Duhme doctrine and section 1823(e) are inapplicable in such an instance. Accordingly, FDIC's motion to strike the first special defense should be denied.
The second, third and fifth special defenses and the first and second counts of the counterclaim are based on an alleged agreement with CBT, which was both oral and in writing separate and distinct from any obligation in the note. It is found that pursuant to12 U.S.C. § 1823(e) Lee is barred from defending or counterclaiming in an action by the FDIC as receiver based upon the oral and written side agreement between himself and the bank alleged in the second, CT Page 8485 third and fifth special defenses and the first and second counts of his counterclaim. It is also found that defendant has failed to allege all of the elements required under 12 U.S.C. § 1823(e). For example, defendant failed to allege contemporaneous execution, board or committee approval, and continued maintenance of the agreement. Accordingly, FDIC's motion to strike the second, third and fifth special defenses and the first and second counterclaims should be granted.
In his fourth special defense Lee alleges that CBT and the FDIC have been engaged in unfair and deceptive trade practices and that Lee is therefore entitled to offset any debt allegedly due to the plaintiff by the damages Lee has suffered. It is the opinion of the court Lee's fourth special defense is not based on any unrecorded side agreement between himself and the bank. Rather, the fourth special defense is based on some unspecified actions of CBT and the FDIC without any mention of any side agreement. It is therefore found that the D'Oench, Duhme doctrine and section 1823(e) are inapplicable in such an instance. However, in its memorandum, the FDIC also argues that the fourth special defense is legally insufficient in that Lee fails to allege any facts to support his defense. It is found that Lee's fourth special defense alleges a legal conclusion which cannot withstand a motion to strike and that Lee has failed to allege the specific actions by CBT and the FDIC which amount to unfair and deceptive trade practices. Accordingly, FDIC's motion to strike the fourth special defense should be granted.
Besides opposing the FDIC's arguments regarding 12 U.S.C. § 1823(e) and the D'Oench, Duhme doctrine, Lee also argues that the court has previously denied two similar motions to strike by the FDIC. Lee argues that these denials should be treated as the law of the case and that the FDIC's present motion to strike should be denied.
 The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked . . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if its is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance.
Breen v. Phelps, 186 Conn. 86, 99, 439 A.2d 1066 (1982).
It is found that the circumstances in this case have caused CT Page 8486 the pleadings to be amended a number of times and nothing would be gained without looking at these new pleadings afresh. Accordingly, the court should not rely on the law of the case.
Lee also argues that the FDIC's latest motion to strike is outside the order of pleadings as set forth in Practice Book 112 and that plaintiff should be ordered to file a responsive pleading. It is found that a new sequence of pleadings is triggered by Lee's amended special defenses and counterclaim. Accordingly, the FDIC's latest motion to strike is not outside the order of pleadings set forth in Practice Book 112.
Lee further argues in opposition to the FDIC's motion to strike that it would be improper and unfair to strike his claims and defenses at this time. Lee argues that the FDIC's motion should be denied until plaintiff complies with defendant's production requests so that Lee can ascertain whether his written agreement with CBT was approved by the bank's board and executed contemporaneously and continually maintained as an official bank record. It is found that even if the production request showed all the necessary elements under 12 U.S.C. § 1823(e), the instant pleadings would have to be amended and therefore Lee's argument is not a persuasive ground to uphold the present defenses and counterclaims.
In conclusion, the FDIC's motion to strike the first special defense is denied. Also the FDIC's motion to strike the second, third, fourth, fifth special defenses and the first and second counterclaims is granted.
RYAN, J.